IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 15, 2021

## TRACY DARRELL ADKINS v. RHONDA FORLAW ADKINS

**Appeal from the Chancery Court for Williamson County**
**No. 44288     Michael Binkley, Judge**

_____

### No. M2021-00384-COA-T10B-CV
_____

This accelerated interlocutory appeal is taken from the trial court's order denying Appellant's motion for recusal.  Because there is no evidence of bias that would require recusal under Tennessee Supreme Court Rule 10B, we affirm the judgment of the trial court.

**Tenn. Sup. Ct. R. 10B Interlocutory Appeal; Judgment of the Chancery Court Affirmed and Remanded.**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J. and KRISTI M. DAVIS, J., joined.

Russ Heldman and Joanie L. Abernathy, Franklin, Tennessee, for the appellant, Rhonda Forlaw Adkins.

Larry Hayes, Jr. and Rachel M. Thomas, Franklin, Tennessee, for the appellee, Tracy Darrell Adkins.

## OPINION

### I. Background

This accelerated interlocutory appeal arises from a contentious divorce that has been pending since 2015.  As discussed, *infra*, this is the third time the parties have appeared before this Court.  The record is voluminous, so in the interest of judicial economy, we will discuss only those facts and proceedings that are relevant to this appeal.

On June 26, 2015, in the Chancery Court for Williamson County ("trial court"), Appellee Tracy Darrell Adkins ("Husband") filed a complaint for divorce against Appellant Rhonda Forlaw Adkins ("Wife") citing irreconcilable differences. In the complaint, Husband asked the trial court to approve and enter the parties' previously executed Marital Dissolution Agreement ("MDA") and Proposed Parenting Plan ("PPP").[1] Wife opposed the entry of the MDA and PPP. On January 7, 2017, the trial court entered a Memorandum and Order (the "Memorandum"), which the trial court explained would serve as the Final Decree of Divorce. In the Memorandum, the trial court declared the parties legally divorced, approved and incorporated both the MDA and the PPP, and awarded Husband reasonable attorney's fees under the MDA. On January 26, 2017, the trial court entered an Amendment to Memorandum and Order Entered January 7, 2017 (the "Amendment"), in which the trial court set a hearing for February 17, 2017 on Husband's attorney's fees. To that end, the trial court ordered Wife's attorneys to submit "all *Timeslip* or other entries made for professional services rendered in this cause with a total amount of attorneys' fees for each attorney, respectively, as well as a total of all costs incurred and billed to [Wife] in order for the Court to properly balance the reasonableness and necessity of the attorneys' fees and costs [Husband] may be requesting [Wife] to pay."

On February 8, 2017, nine days before the scheduled hearing on Husband's attorney's fees, Wife filed her first Rule 10B Motion for Recusal or Disqualification of Judge (the "First 10B"), wherein she asked Judge Michael Binkley to recuse himself from the case. Although she argued several grounds for recusal, as it concerns this appeal, Wife claimed that Judge Binkley showed bias in Husband's favor by allegedly considering Husband's Proposed Findings of Fact and Conclusions of Law when drafting both the January 7, 2017 Memorandum and the subsequent January 26, 2017 Amendment. By order of February 16, 2017, the trial court denied the First 10B.[2]

On March 9, 2017, Wife filed an accelerated interlocutory appeal of the trial court's denial of the First 10B. On May 11, 2017, this Court issued its opinion in *Adkins v. Adkins*, No. M2017-00495-COA-T10B-CV, 2017 WL 1960549 (Tenn. Ct. App. May 11, 2017) ("*Adkins I*"), wherein we affirmed the trial court's denial of the First 10B. *Id.* at *9. On May 31, 2017, Wife filed an application for appeal of *Adkins I* to the Tennessee Supreme Court. By order of June 28, 2017, the Tennessee Supreme Court denied Wife's application but designated the *Adkins I* opinion "Not for Citation" under Supreme Court Rule 4(E)(1). Wife filed a petition for rehearing in the Supreme Court; the petition was denied on July 7, 2017.

---

[1] In 2014, Wife filed a complaint for divorce against Husband in a separate cause of action. During the pendency of that case, the parties executed the MDA and PPP. By agreed order, the parties "expunged" the previous divorce filing with the alleged understanding that the parties would refile for divorce and enter the previously executed MDA and PPP. No final decree was entered in the 2014 proceeding.

[2] It appears from the record that the trial court has consistently denied ever reviewing or using Husband's proposed findings and facts and conclusions of law when preparing the Memorandum and the Amendment.

Despite the fact that this Court found no evidence of the trial judge's bias, on remand, Wife continued to pursue information concerning the underlying factual and legal basis for the trial court's January 7, 2017 Memorandum and the subsequent January 26, 2017 Amendment. Specifically, Wife sought the production of documents the trial court relied upon in deciding and preparing the orders. On August 11, 2017, Wife filed a motion to compel, seeking testimony and documents from the trial judge's legal assistant, Deborah Rubenstein.[3] On August 18, 2017, the trial court entered an order in which Judge Binkley recused himself from hearing Wife's motion to compel as it concerned Ms. Rubenstein. However, the day before Judge Binkley entered this order, he held the hearing on Husband's attorney's fees, which hearing had been postponed after Wife's filing of the First 10B. After receiving a summary of billings and fees from attorneys for both parties, the trial court awarded Husband $533,278 in attorney's fees. In the weeks that followed, Wife's motion to compel was reassigned to Judge Russell Parkes.

On November 1, 2017, after the trial court heard arguments regarding Husband's attorney's fees but before the trial court entered an order awarding Husband's fees, Wife filed a second Motion for Complete Recusal and Disqualification of Trial Judge (the "Second 10B"). As it concerns this appeal, Wife argued that Judge Binkley's August 18, 2017 decision to partially recuse himself should have been a complete recusal. On January 31, 2018, Judge Parkes denied Wife's motion to compel and referred the case back to Judge Binkley. By order entered April 11, 2018, Judge Binkley denied the Second 10B.[4]

Also, on April 11, 2018, the trial court entered a Memorandum and Order on Issue of Attorney's Fees (the "Attorney's Fees Order"), in which it outlined "the extraordinary lengths Wife undertook to delay the resolution of this case." In the order, the trial court found that Wife had "paid her attorneys a combined total of $749,273 just through August 17, 2017 in her unsuccessful attempt to set aside the parties['] MDA and PPP." Similarly, the trial court found that Husband's attorney had charged him $533,278 "mostly for simply defending the dozens and dozens of spurious pleadings filed by Wife, almost all of which were totally unsuccessful." Accordingly, the trial court granted Husband a judgment against Wife for $533,278 in attorney's fees plus interest.

Wife did not file a timely accelerated interlocutory appeal of the denial of the

---

[3] We also note that, on August 15, 2017, Wife filed a separate Open Records Act lawsuit against Judge Binkley and Ms. Rubenstein for "Access to Public Records." This suit was dismissed with prejudice on January 31, 2018.

[4] On April 29, 2019, the trial court entered an order clarifying the timeline of the trial court's ruling on the Second 10B. According to the order, the trial court signed the order denying the Second 10B on April 11, 2018, which was the same date the order was filed in the Clerk and Master's Office. The Clerk and Master signed the certificate of service on April 16, 2018, but the "Filed for Entry Date" listed the incorrect year of 2016. The April 29, 2019 order held that the "Filed for Entry" date should have reflected April 16, 2018 rather than April 16, 2016.

- 3 -

Second 10B. Rather, she pursued a Tennessee Rule of Appellate Procedure Rule 3 appeal, discussed *infra*. On September 10, 2018, the trial court granted Wife's request that it "expressly direct entry of final judgment pursuant to [Tennessee Rule of Civil Procedure] 54.02" as to fourteen orders, including the Attorney's Fees Order and the order denying Wife's Second 10B. On October 5, 2018, Wife filed a motion to alter or amend this judgment, which motion the trial court denied by order of November 13, 2018. On December 11, 2018, Wife filed an amended notice of appeal in which she gave notice that she was appealing, *inter alia*, the Attorney's Fees Order and the trial court's denial of the Second 10B.

On September 18, 2020, after briefing on Wife's Rule 3 appeal had been completed but before oral argument, the parties, through their attorneys, approved an agreed order directing the sale of jointly held real property. The parties also agreed that the sale proceeds would be held by the Clerk and Master, pending further orders of the trial court.[5] Also, on September 18, 2020, Husband filed a Motion to Disburse Proceeds (the "Motion to Disburse") in the trial court. In this motion, Husband asked the trial court to disburse Wife's share of the sale proceeds to him in satisfaction of the $533,278 judgment (plus interest) for attorney's fees. On November 5, 2020, the trial court heard Husband's Motion to Disburse and took the matter under advisement.

On December 22, 2020, this Court issued its opinion in ***Adkins v. Adkins***, No. M2018-00890-COA-R3-CV, 2020 WL 9602029 (Tenn. Ct. App. Dec. 22, 2020) ("***Adkins II***"). In ***Adkins II***, we determined that "the trial court's order was improvidently certified as final," and we dismissed Wife's Rule 3 appeal for lack of subject matter jurisdiction. *Id.* at *5. Thereafter, Wife filed a petition to rehear, which this Court denied on January 14, 2021.

On January 28, 2021, Husband filed a Motion to Rule on Motion to Disburse Proceeds Heard on November 5, 2020, any Other Outstanding Issues, and to Enter a Final Order Pursuant to the Court of Appeals' December 22, 2020 Order (the "Motion to Rule"). This motion requested, in pertinent part, that the trial court rule on Husband's Motion to Disburse that the trial court took under advisement at the November 5, 2020 hearing. On February 11, 2021, the trial court heard and orally granted Husband's Motion to Rule solely as to the Motion to Disburse. Specifically, the trial court granted Husband's request for disbursement of $631,490 (i.e., judgment for attorney's fees plus interest) from Wife's portion of sale proceeds and directed Husband's counsel to draft the order. On Friday, February 19, 2021, Husband's counsel delivered a copy of the proposed order to Wife's counsel.

Three days later, on February 22, 2021, Wife filed a third Rule 10B Motion for

---

[5] Although the parties appear to have agreed to this order on September 18, 2020, it was not filed until September 28, 2020.

Immediate Recusal of Trial Judge (the "Third 10B"). In the Third 10B, Wife alleged the following grounds for recusal: (1) the trial judge cited **Adkins I** that had been marked as "Not for Citation" when he decided the Motion to Disburse; (2) the trial judge held two hearings and took action in the case when the Appellate Courts had jurisdiction over the matter; (3) the trial judge's partial recusal should have been an absolute recusal; (4) the trial judge disregarded the Tennessee Supreme Court's opinion in **Cook v. State**, 606 S.W.3d 247 (Tenn. 2020), which Wife alleged "mak[es] clear that partial recusals are not allowed and recusals must be complete in any proceeding in the case . . . ;" and (5) the trial judge made comments at the November 5, 2020 hearing on the Motion to Disburse, which demonstrated bias against Wife and her attorneys and partiality in favor of Husband.

On February 25, 2021, the trial court entered the order on Husband's Motion to Rule and also granted Husband's Motion to Disburse (the "Order Disbursing Funds"). On March 4, 2021, Husband filed his response in opposition to the Third 10B. On March 15, 2021, Wife filed her Rule 11 application with the Tennessee Supreme Court for permission to appeal this Court's dismissal of her appeal in **Adkins II**. By order of May 12, 2021, the Tennessee Supreme Court denied Wife's appeal of **Adkins II**.

On March 24, 2021, the trial court entered an order denying the Third 10B. The trial court specifically addressed each of Wife's alleged grounds for recusal and also expressed its "genuine and real concerns about Wife's continuing lack of credibility" in the trial court. Although the trial court fully responded to the Third 10B, it attached to its order, as Exhibit A, Husband's response to the Third 10B. In so doing, the trial court requested that this Court review Husband's response "in tandem" with the trial court's order "to perhaps understand another perspective on the recusal issues."

On April 14, 2021, Wife filed, via an accelerated interlocutory appeal, the Rule 10B Section 2.03 Petition for Recusal Appeal of Judge Michael W. Binkley (the "Third 10B Petition"), appealing the trial court's denial of the Third 10B. By order of April 23, 2021, this Court requested that Husband file a response to the Third 10B Petition, which response was filed on May 13, 2021. In his response, Husband argues that Wife's appeal is frivolous and asks this Court to award him attorney's fees. On May 18, 2021, Wife filed a motion with this Court asking permission to file a reply brief in response to Husband's allegations of frivolity and his request for appellate attorney's fees. By order of May 20, 2021, we granted Wife permission to respond but limited her response to the sole issue of Husband's request for appellate attorney's fees. On June 2, 2021, Wife filed her reply. In our discretion, we decide this recusal appeal without oral argument. *See* Tenn. R. Sup. Ct. 10B, § 2.06 ("The appellate court's decision, in the court's discretion, may be made without oral argument.").

## II. Issue

The only order this Court may review on an appeal under Tennessee Supreme Court Rule 10B is the trial court's order denying the motion to recuse. *Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012). Under Tennessee Supreme Court Rule 10B, "we may not review the correctness or merits of the trial court's other rulings." *Id.* Accordingly, the sole issue is whether the trial court erred in denying the Third 10B motion for recusal. *Williams by & through Rezba v. HealthSouth Rehab. Hosp. N.*, No. W2015-00639-COA-T10B-CV, 2015 WL 2258172, at *5 (Tenn. Ct. App. May 8, 2015).

## III. Standard of Review

Tennessee Supreme Court Rule 10B requires appellate courts to review a trial court's ruling on a motion for recusal under a *de novo* standard of review with no presumption of correctness. Tenn. Sup. Ct. R. 10B, § 2.01. The party seeking recusal bears the burden of proof, and "any alleged bias must arise from extrajudicial sources and not from events or observations during litigation of a case." *Williams by & through Rezba*, 2015 WL 2258172, at *5 (citing *McKenzie v. McKenzie*, No. M2014-00010-COA-T10B-CV, 2014 WL 575908, at *3 (Tenn. Ct. App. Feb. 11, 2014)). We further note that in its order denying her Third 10B, the trial court made the following finding concerning Wife's credibility:

> It cannot go without saying this [t]rial [c]ourt does have genuine and real concerns about Wife's continuing lack of credibility in this [t]rial [c]ourt. The [t]rial [c]ourt again, will not reiterate the many reasons listed in its *Memorandum and Order* of January 7, 2017 why this [t]rial [c]ourt had to rule Wife was not credible and gave several examples which are akin to her false statements in Wife's *[Third] Rule 10B Motion*. Wife makes statements she cannot back up. This [t]rial [c]ourt has the same concerns regarding the issues and reasons set forth by Wife in her *[Third] Rule 10B Motion* to recuse. The issues are simply not supported by the case law and are not even supported by statements by Wife in her *[Third] Rule 10B Motion* to recuse.

It is well settled that this Court is "required to defer to the trial court's credibility findings . . . ." *Williams v. City of Burns*, 465 S.W.3d 96, 120 (Tenn. 2015); *see also Street v. Street*, No. E2016-00531-COA-R3-CV, 2017 WL 1177034, at *7 (Tenn. Ct. App. Mar. 29, 2017). With the foregoing in mind, we now turn to address Wife's alleged grounds for recusal.

## IV. Grounds for Recusal

As an initial matter, we note that Wife's arguments in both the Third 10B and the Third 10B Petition are scattered, disjointed, incoherent at times, and repetitious. Indeed, the trial court noted in its order denying the Third 10B that it struggled to interpret and

address Wife's alleged grounds for recusal. We, too, have encountered great difficulty in deciphering Wife's arguments. Nonetheless, we have made an earnest attempt to fully address each of Wife's alleged grounds for recusal. We begin with a review of the applicable legal principles concerning questions of recusal, which are succinctly stated in ***In Re: Samuel P.***, No. W2016-01592-COA-T10B-CV, 2016 WL 4547543, at \*2 (Tenn. Ct. App. Aug. 31, 2016), to-wit:

> The party seeking recusal bears the burden of proof. ***Williams***, 2015 WL 2258172, at \*5; ***Cotham v. Cotham***, No. W2015-00521-COA-T10B-CV, 2015 WL 1517785, at \*2 (Tenn. Ct. App. Mar. 30, 2015) (*no perm. app. filed*). "[A] party challenging the impartiality of a judge 'must come forward with some evidence that would prompt a reasonable, disinterested person to believe that the judge's impartiality might reasonably be questioned.'" ***Duke***, 398 S.W.3d at 671 (quoting ***Eldridge v. Eldridge***, 137 S.W.3d 1, 7-8 (Tenn. Ct. App. 2002)). When reviewing requests for recusal alleging bias, "it is important to keep in mind the fundamental protections that the rules of recusal are intended to provide." ***In re A.J.***, No. M2014-02287-COA-R3-JV, 2015 WL 6438671, at \*6 (Tenn. Ct. App. Oct. 22, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016). "**The law on judicial bias is intended 'to guard against the prejudgment of the rights of litigants and to avoid situations in which the litigants might have cause to conclude that the court had reached a prejudged conclusion because of interest, partiality, or favor.'**" ***Id.*** (quoting ***Bean v. Bailey***, 280 S.W.3d 798, 803 (Tenn. 2009)).
>
> The terms "bias" and "prejudice" usually refer to a state of mind or attitude that works to predispose a judge for or against a party, but not every bias, partiality, or prejudice merits recusal. ***Watson v. City of Jackson***, 448 S.W.3d 919, 929 (Tenn. Ct. App. 2014) (citing ***Alley v. State***, 882 S.W.2d 810, 821 (Tenn. Crim. App. 1994)). "'**Even though the judge is expected to have no bias at the beginning of the trial, he must, perforce, develop a bias at some point in the trial; for the decision at the conclusion of the trial is based upon the impressions, favorable or unfavorable, developed during the trial**.'" ***Id.*** at 933 (quoting ***Spain v. Connolly***, 606 S.W.2d 540, 544 (Tenn. Ct. App. 1980)). To merit disqualification, the prejudice must be of a personal character, directed at the litigant, and stem from an extrajudicial source resulting in an opinion on the merits on some basis other than what the judge learned from participation in the case. ***Id.*** at 929. "A trial judge's opinions of the parties or witnesses that are based on what he or she has seen at trial are not improper and 'generally do[ ] not warrant recusal.'" ***Id.*** at 933 (quoting ***Neuenschwander v. Neuenschwander***, No. E2001-00306-COA-R3-CV, 2001 WL 1613880, at \*11 (Tenn. Ct. App. Dec. 18, 2001)).

*In Re: Samuel P.*, 2016 WL 4547543, at \*2 (emphases added). We apply the foregoing principles and law to Wife's alleged grounds for recusal.

### A. Issues Raised for the First Time on Appeal

Upon review, it appears Wife has raised several arguments in the Third 10B Petition that were not presented to the trial court. Generally, "[i]ssues not raised in the trial court cannot be raised for the first time on appeal." *Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006) (citing *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991)); *see also Dougherty v. Dougherty*, No. W2020-00284-COA-T10B-CV, 2020 WL 1189096, at \*3 (Tenn. Ct. App. Mar. 12, 2020). Indeed, the trial court "first must be allowed under Rule 10B to decide whether to grant or deny a motion to recuse on all the grounds raised by the movant." *Dougherty*, 2020 WL 1189096, at \*3. We discuss each new issue below.

### 1. Wife's Fourth Issue on Appeal: Trial Court's Actions While Motions to Recuse were Pending

As stated in the Third 10B Petition, Wife's fourth issue on appeal is

> [w]hether the Court of Appeals should Order Judge Binkley recused for conducting a hearing and Ordering the Disbursement of Proceeds by Order of February 25, 2021, while [Wife's] Motion for Immediate Recusal of Trial Judge was still pending **and** while Appellate Court jurisdiction has not been returned to the Trial Court by mandate under T.R.A.P. 42.

(Emphasis in original). Although listed as one issue, Wife asserts two separate grounds for recusal here, i.e., that Judge Binkley should be recused for conducting a hearing and entering an order: (1) while the Third 10B was pending; and (2) before a mandate issued in *Adkins II*. Turning to the Third 10B Petition, Wife's arguments concerning these two grounds appear under separate argument headings in the body of her brief. The first heading/argument ("Argument 1") begins on page 61, to-wit:

> II. Judge Michael Binkley erred under Rule 10B, Secs. 1.02 and 1.04, in ordering funds disbursed on February 25, 2021 to pay [Husband's] judgment for any attorney's fees and expenses, from the order of April 11, 2018, as a matter of law while [Wife's] February 22, 2021, Rule 10B Motion for Immediate Recusal was still pending and not decided until subsequent order of March 25, 2018.

The second heading/argument ("Argument 2") begins on page 78 of Wife's brief, to-wit:

> IV. The Court of Appeals should order Judge Binkley recused for conducting

a hearing and ordering the disbursement of proceeds by order of February 25, 2021, while [Wife's] Motion for Immediate Recusal of Trial Judge was still pending and while appellate court jurisdiction had not been returned to the trial court by mandate under T.R.A.P. 42.

We discuss each argument in turn.

### a. Argument 1

Although Wife's fourth issue on appeal mentions only the trial court's entry of the February 25, 2021 order (i.e., the Order Disbursing Funds), in the body of Argument 1, Wife alleges that the trial judge should be recused for entering both the February 25, 2021 order while the Third 10B was pending *and* the April 11, 2018 Attorney's Fees Order while the Second 10B was pending. Accordingly, Wife asks this Court to vacate both orders. Specifically, Wife argues that

> [o]n November 1, 2017, [Wife] filed a Second Rule 10B Motion for Complete Recusal of Disqualification of Trial Judge. This Motion was pending until April 16, 2018, when it was denied by Order. The Order Denying [Wife's] Motion for Complete Recusal was entered and effective April 16, 2018, pursuant to T.R.C.P. 58 and an Order entered April 29, 2019. Judge Binkley took erroneous "further action" prior thereto. Tenn. S. Ct. Rule 10B, Sec. 1.02 states:
>
> > While the motion is pending, the Judge whose disqualification is sough[t] shall make no further orders an[d] take no further action on the case, except for good cause stated in the order in which the action is taken.
>
> The April 11, 2018, Memorandum and Order [o]n Issue of Attorney's Fees shows the Trial Judge took or was taking "further action" in violation of Rule 10B, Sec. 1.02, while [Wife's] Recusal Rule 10B Motion was pending. Likewise, the February 25, 2021, Order Disbursing Funds to Pay Attorney's Fees shows the Trial Judge took or was taking "further action" and making a "further Order" without any finding of good cause stated in the Order in which the action was taken," while [Wife's] Rule 10B Immediate Motion for Recusal, filed February 22, 2021, was pending. The Attorney's Fees Order and the Disbursement Order both should be vacated.

(Emphasis and internal citations omitted).[6]

_____

[6] During this argument, Wife also briefly delves into two other alleged grounds for disqualification: (1) the trial judge should have fully recused himself in August of 2017; and (2) Husband agreed to wait for

Upon review, we conclude that Wife failed to raise, as an issue in the Third 10B, the trial court's entry of the April 11, 2018 Attorney's Fees Order while the Second 10B was pending. Because the trial court was not presented with the opportunity to grant or deny a motion recuse on this ground, we do not review it on appeal. **Barnes**, 193 S.W.3d at 501; **Dougherty**, 2020 WL 1189096, at *3.

Turning to the issue of the trial court's entry of the February 25, 2021 Order Disbursing Funds while the Third 10B was pending, as discussed *supra*, Wife filed the Third 10B on February 22, 2021, but the trial court did not enter the Order Disbursing Funds until February 25, 2021, three days later. Accordingly, the facts forming the basis for this alleged ground for recusal had yet to occur when Wife filed the Third 10B. Regardless, the trial court addressed this ground in its order denying the Third 10B, and we will now address it on appeal.[7]

As discussed, *supra*, Wife alleges that Judge Binkley's entry of the Order Disbursing Funds violated Tennessee Supreme Court Rule 10B, section 1.02. Section 1.02 states that, "[w]hile the motion [for recusal] is pending, the judge whose disqualification is sought shall make no further orders and take no further action on the case, except for good cause stated in the order in which such action is taken." Tenn. Sup. Ct. R. 10B, § 1.02. Wife alleges the trial court violated section 1.02 and took "further action" when it entered the Order Disbursing Funds while the Third 10B was pending.

As the trial court explained in its order denying the Third 10B, this Court recently addressed this very issue in **Guo v. Rogers**, No. M2020-01321-COA-T10B-CV, 2020 WL 6781244 (Tenn. Ct. App. Nov. 18, 2020). In **Guo**, the appellant alleged that the trial court violated section 1.02 when it entered an order on the appellant's motion to revise while his motion to recuse was pending. **Id.** at *4. The record showed that the trial court heard the appellant's motion to revise on July 10, 2020 and orally denied it at the hearing. **Id.** That day, the appellee drafted a proposed order denying the motion to revise and mailed it to the appellant. **Id.** The appellant filed a motion to recuse nine days later, on July 19, 2020. On August 6, 2020, the trial court entered the order on the motion to revise while the motion to recuse was pending. **Id.** In concluding this entry was not error, we explained that "[t]he

---

the mandate to return from the Appellate Court in **Adkins II** before having the trial court rule on the Motion to Disburse. We address those grounds, *infra*, Sections B and D, respectively.

[7] We note that Wife included the following statement on page 1 of the Third 10B: "Section 1.02 of Rule 10B states that while the motion is pending, the Judge whose disqualifications is sought shall make no further orders and take no further action on the case." Furthermore, it appears from the record that, on the day Wife filed the Third 10B, she also filed an Objection to Entry of Order wherein she objected to the trial court entering the Order Disbursing Funds, cited to Tennessee Supreme Court Rule 10B, section 1.02, and alleged that the trial court could "enter no further order and . . . take no further action" while the Third 10B was pending. It is possible this is Wife's argument that the trial court was responding to in its order denying the Third 10B.

purpose of section 1.02 is to ensure that a trial court makes no *substantive* decisions while the motion to recuse is pending." ***Id.*** (citing ***In re Estate of Abbott***, No. W2017-02086-COA-T10B-CV, 2017 WL 4864816, at *2 (Tenn. Ct. App. Oct. 27, 2017)) (emphasis added). When looking at the record in ***Guo***, it was clear that the trial court denied the motion to revise on July 10, 2020. "In other words, the trial court made its substantive decision on the motion on July 10, 2020, which was nine days before Mr. Guo filed his motion to recuse." ***Guo***, 2020 WL 6781244, at *4. We further concluded that "[t]he trial court's electronic signing and filing of the order on August 6, 2020 was purely administrative" and did not violate section 1.02. ***Id.***

Similarly, in this case, the trial court heard Husband's Motion to Rule on February 11, 2021. The transcript of the hearing, which Husband included as an exhibit to his response to the Third 10B Petition, shows that the trial court made its substantive ruling on Husband's Motion to Rule from the bench that day, i.e., eleven days before Wife filed her motion to recuse. Although the trial court did not enter its written Order Disbursing Funds until February 25, 2021, as in ***Guo***¸ entry of the order was purely administrative and did not violate section 1.02 of Tennessee Supreme Court Rule 10B. ***Id.***[8]

### b. Argument 2

Turning to Argument 2, it appears this argument corresponds with Wife's fourth alleged ground for recusal from the Third 10B Petition, which we address, *infra*, Section D.

### 2. Wife's Sixth Issue on Appeal: Trial Court's Citation to Husband's Response to Third 10B

Although we address it out of sequence, Wife's final issue on appeal concerns the trial court's inclusion of Husband's response to the Third 10B as an exhibit to the trial court's order denying recusal. Specifically, Wife's issue is

> [w]hether the Trial Judge erred in adopting arguments and claims from [Husband's] Response in opposition to [Wife's] Rule 10B Motion incorporating it into and making it a part of his Order denying recusal as Exhibit A, showing that his deliberation and decision not to recuse was not the exercise of the Trial Judge's own Independent Judgment, in violation of ***Smith v. UHS of Lakeside, Inc.***, 439 S.W.3d 303, 314-16 (Tenn. 2014).

---

[8] In the Third 10B Petition, Wife alleges that the trial court's reliance on ***Guo*** is misplaced. It appears that Wife tries to distinguish ***Guo*** from this case by citing to her partial recusal argument from the Second 10B and her jurisdictional argument from the Third 10B. We are not persuaded by Wife's attempt to distinguish ***Guo*** from the instant case, and we conclude that the trial court's reliance on ***Guo*** was not error.

Wife specifically argues that, "[o]n page[s] 1 and 30 of Judge Binkley's 'Court's Response' or Order entered March 25, 2021, Judge Binkley erroneously 'annexed' [Husband's] Response in Opposition to [Wife's] Motion for Immediate Recusal of Trial Judge, filed March 4, 2021, and 'made [it] a part hereof' his Order." Wife cites *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 314-16 (Tenn. 2014), in support of her argument that the trial court's incorporation of "[Husband's] Response wholesale and making it a part of his Order '**casts doubt**' on whether Judge Binkley 'conducted his own independent review, or that the opinion is the product of his own judgment.'" (Emphasis in original). As an initial matter, in *Smith*, the Tennessee Supreme Court addressed a summary judgment order that the trial court had instructed the prevailing counsel to prepare. *Id.* at 311. Accordingly, the issue in that case concerned whether the trial court's order on summary judgment complied with Tennessee Rule of Civil Procedure Rule 56.04. The Supreme Court explicitly discussed Rule 56.04 and its requirement that trial courts "shall state the legal grounds upon which the court denies or grants [a motion for summary judgment], which shall be included in the order reflecting the court's ruling." Tenn. R. Civ. P. 56.04. *See id.* at 311-14. In the context of Rule 56.04, the *Smith* Court explained that Tennessee courts "adhere to the view that findings of fact, conclusions of law, opinions, and orders prepared by trial judges themselves are preferable to those prepared by counsel," and noted its concern "about the practice of courts adopting verbatim findings of fact, conclusions of law, opinions, and orders prepared by counsel for the prevailing party." *Id.* at 314. Despite this preference, the Tennessee Supreme Court explained that a court may use "party-prepared" findings of fact, conclusions of law, or other order, as long as the following conditions are satisfied: (1) the findings and conclusions or order accurately reflect the trial court's decision; and (2) the record creates no doubt that the decision represents the trial court's own deliberations and decision. *Id.* at 315-16 (internal citations omitted). Because this appeal concerns neither a motion for summary judgment nor findings of facts and conclusions of law, the *Smith* case is not dispositive. However, it is instructive concerning the fact that a trial court's order must reflect its independent decision.

Upon our review of Husband's response to the Third 10B and the trial court's order denying recusal, we find no evidence to support Wife's contention that the trial court "wholesale adopt[ed]" Husband's claims and arguments. The trial court's order is not, as Wife suggests, a verbatim recitation of Husband's response. For example, while Husband's response was general in nature, the trial court specifically addressed each of Wife's alleged grounds for recusal in the order in which they were presented in her Third 10B. Although some of the trial court's findings overlap with the facts and law outlined in Husband's response, such overlap is likely due to the fact that Husband's response is legally sound and factually based, not because the trial court adopted it without consideration of the substantive arguments.

Nonetheless, Wife cites two instances where the trial court's order mentions Husband's response as proof that the trial court adopted Husband's response verbatim. The

trial court's first reference to Husband's response is found on page 1 of the trial court's order denying the Third 10B, to-wit:

> Additionally, this [t]rial [c]ourt most respectfully requests the pleading recently electronically filed on March 4, 2021 in this matter titled, "*[Husband's] Response in Opposition to [Wife's] Rule 10B Motion for Immediate Recusal of Trial Judge*," by [Husband's attorneys] be reviewed by the Appellate Court to perhaps understand another perspective on the recusal issues. A copy of *[Husband's] Response in Opposition to [Wife's] Rule 10B Motion for Immediate Recusal of Trial Judge* is annexed to this *Response* as **Exhibit "A"** hereto and made a part hereof.

Immediately after the foregoing paragraph, on page 2 of the order, the trial court stated:

> The [t]rial [c]ourt, in making this request, respectfully submits that it fully and completely understands that it is this [t]rial [c]ourt's sole responsibility and obligation to fully respond to the *[Third] Rule 10B Motion* filed by Wife, but simply requests the Appellate Court to review Husband's *Response* in tandem with this [c]ourt's full *Response* as set forth below.

Notably, Wife did not cite to this second statement in the Third 10B Petition.

These references do not support Wife's contention concerning the trial court's reliance on Husband's response. Contrary to Wife's position, in the foregoing comments, the trial court actually acknowledges its responsibility to fully respond to the Third 10B. The comments also evidence the trial court's recognition that its order denying the Third 10B is separate and distinct from Husband's response. As such, the trial court invites this Court to review the two documents "in tandem." In short, there is nothing in the trial court's order to demonstrate that it actually adopted Husband's arguments. Rather, the foregoing statements demonstrate the opposite, i.e., that the trial court understood and complied with its responsibility to make its own judgment concerning the merits of the Third 10B.

The inclusion of Husband's response as an exhibit to the trial court's order was done simply to give this Court more context to aid our review. Indeed, the trial court also included its order denying the Second 10B as an exhibit to its order denying the Third 10B for this very reason. As the trial court stated:

> The [t]rial [c]ourt most respectfully requests[,] given the huge volume of pleadings in this case, as evidenced by the fact this case has continuously been litigated for the past seven (7) years, and in order for the Appellate Court to have a brief summary of the period of time this case was litigated

- 13 -

from March 2014 until April 11, 2018, that the Appellate Court review the Trial *Court's Response to Second Rule 10B Motion for Complete Recusal and Disqualification of Trial Judge Filed November 1, 2017 . . .*, specifically **pages 1 through 17**. . . . The [t]rial [c]ourt believes it will save a tremendous amount of time for the Appellate Court to review the pages set out above for a history of the events which occurred between March 2014 through April 11, 2018.

(Emphasis in original). Similarly, on page 30 of its order denying the Third 10B, the trial court stated:

This [t]rial [c]ourt can say it has done everything it can to be cordial to all counsel in this case, and has done everything it can to accommodate both counsel in every way it possibly could throughout the seven (7) years of this litigation. The [t]rial [c]ourt will not bore the Appellate Court with examples of this [t]rial [c]ourt's fair and equal treatment of both parties as evidenced by statements pulled from the record by Husband's attorneys in their *Response in Opposition to [Wife's] Rule 10B Motion for Immediate Recusal of Trial Judge* filed March 4, 2021, but would simply state it was the norm of this [t]rial [c]ourt to treat everyone with the utmost respect in trying to resolve issues in this case. *See*, **Exhibit "A**,*"* Husband's *Response in Opposition to [Wife's] [Third] Rule 10B Motion for Immediate Recusal of Trial Judge*, **pp. 34-41**, March 4, 2021.

(Emphasis in original). Again, the trial court's reference to Husband's response, specifically pages 34-41, was to present this Court with the full picture of the underlying litigation and the trial court's actions during it.[9] The trial court did not adopt Husband's arguments or claims, but merely called attention to the seven pages in Husband's response where Husband provided examples of the trial court's patience with and deference to counsel for both parties. Given that the issue pending before this Court is whether the trial judge is biased against Wife, Judge Binkley was correct to present this Court with examples of his equitable treatment of the parties and their respective attorneys. Inclusion of Husband's response was merely one way to do this, and there is no indication that the trial court's order was not the result of its own deliberations. *Id.* at 315-16. Accordingly, to the extent Wife argues that the trial court's references to Husband's response demonstrates any bias or prejudice against her, we conclude that she has failed to satisfy her burden of proof. ***Williams by & through Rezba***, 2015 WL 2258172, at *5; ***Cotham***, 2015 WL 1517785, at *2. We now turn to address the grounds for recusal that Wife raised in the trial court.

---

[9] We note that Husband included these same citations to previous hearing transcripts on pages 16-23 of his Response to the Third 10B Petition.

## B. Trial Court's Partial Recusal

Wife's first and second alleged grounds for recusal concern whether the trial judge should have completely recused himself in August of 2017. For reasons discussed, *infra*, we conclude that: (1) this Court lacks jurisdiction in the current appeal (of the Third 10B) to adjudicate this ground as raised in the Second 10B; and (2) Wife waived this issue in the Third 10B.

The record shows that two of Wife's recusal motions alleged the trial judge's partial recusal as a ground for disqualification. In the Second 10B, filed November 1, 2017, Wife alleged:

> 1. Judge Binkley's recusal, which he decided to do on his own before the hearing of August 17, 2017 and which he Ordered on August 18, 2017, should have been a complete recusal from the entire proceeding in *Adkins v. Adkins* and it should not have been "partial" as to one (1) Motion only, under Rule 2.11(A), Tennessee Supreme Court Rules, and all other applicable authority, thus rendering any participation in this case invalid from the decision of recusal.

By order of April 11, 2018, the trial court denied the Second 10B. In the Third 10B, which is the sole subject of this appeal, Wife alleged:

> 3. The Trial Judge previously partially recused himself from this case by Order entered August 18, 2017, finding on his own he needed to do so to avoid the appearance of partiality under Tenn. S. Ct. Rule 10, R.J.C. 2.11(A), but later, over Ms. Adkins' objection in her Second Rule 10B Motion for disqualification or recusal on the ground that partial recusals are not allowed by the Tennessee Supreme Court or Tennessee state law, the Trial Judge (1) erroneously selected himself to succeed the successor judge (Judge Russell Parkes) in violation of Rule 10B Sec. 1.04, (2) awarded Mr. Adkins attorney's fees, in violation of Rule 10B, Sec. 1.02, (which are the subject of the motion to disburse and the motion to rule, as well as an appeal), and thereafter (3) erroneously denied the complete recusal motion.

> 4. The Trial Judge has disregarded a recent 2020 Tennessee Supreme Court Opinion, *Cook v. State*, 606 S.W.2d 247 (Tenn. 2020), making it clear that partial recusals are not allowed and recusals must be complete in any proceeding in the case thereafter to avoid the appearance of impropriety under Tenn. S. Ct. Rule 10, R.J.C. 211(A).

By order of March 24, 2021, the trial court denied the Third 10B.

- 15 -

A litigant must timely appeal a trial court's denial of a Rule 10B motion before this Court may review the alleged grounds for recusal within it. Tennessee Supreme Court Rule 10B, section 2.01 explains the two ways in which a party may appeal a trial court's denial of a motion for recusal: (1) through an accelerated interlocutory appeal as of right; or (2) raised as an issue in a Tennessee Rule of Appellate Procedure Rule 3 appeal as of right.[10] Tenn. Sup. Ct. R. 10B, § 2.01. "To effect an accelerated interlocutory appeal as of right, . . . a petition for recusal appeal shall be filed in the appropriate appellate court within twenty-one days of the trial court's entry of the order." Tenn. Sup. Ct. R. 10B, § 2.02. To effectuate an appeal through Tennessee Rule of Appellate Procedure Rule 3, "the notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from." Tenn. R. App. P. 4(a).

The record shows that Wife did not file a timely accelerated interlocutory appeal of the trial court's denial of the Second 10B. Rather, Wife raised it as an issue in an appeal under Tennessee Rule of Appellate Procedure Rule 3. However, as discussed *supra*, this Court never reached the substantive issues in Wife's Rule 3 appeal because "the trial court's order was improvidently certified as final," and, as such, deprived this Court of subject matter jurisdiction over the appeal. *See Adkins*, 2020 WL 9602029 at *5. Therefore, we cannot address the trial court's denial of the Second 10B in this interlocutory appeal of the denial of the Third 10B.

Turning to the trial court's denial of the Third 10B, we conclude that Wife has waived her argument concerning whether the trial court's partial recusal constitutes reversible error. As discussed, *infra*, under Tennessee Supreme Court Rule 10B, section 1.01, "a recusal motion must be 'filed promptly after the facts forming the basis for the motion become known, and the failure to assert them in a timely manner results in a waiver of a party's right to question a judge's impartiality.'" *Cain-Swope v. Swope*, 523 S.W.3d 79, 88 (Tenn. Ct. App. 2016), *perm. app. denied* (Tenn. April 12, 2017) (quoting *Duke*, 398 S.W.3d at 670); *see* Tenn. Sup. Ct. R. 10B, § 1.01. "Rule 10B does not place a brightline rule on the timeliness of recusal motions, nor has this Court ever adopted such a rule." *Stark v. Stark*, No. W2019-00901-COA-T10B-CV, 2019 WL 2515925, at *6 (Tenn. Ct. App. June 18, 2019).

Here, this ground for recusal, i.e., partial recusal as opposed to full recusal, arises from the August 18, **2017** order, in which Judge Binkley recused himself from hearing Wife's motion concerning his legal assistant. As such, Wife learned of the facts establishing this ground for recusal at the time the order was filed, i.e., August 18, 2017. *See* Tenn. Sup. Ct. R. 10B, § 1.01. Although we acknowledge that Wife raised this issue in her appeal of the Second 10B, this Court never achieved subject matter jurisdiction over

---

[10] Tennessee Supreme Court Rule 10B, section 2.01 provides that these two methods "shall be the **exclusive** methods for seeking appellate review of any issue concerning the trial court's denial of a motion filed pursuant to this rule." Tenn. Sup. Ct. R. 10B, § 2.01 (emphasis added).

- 16 -

that appeal. Now, Wife attempts to relitigate the issue of partial recusal some three-and-a-half years after the trial court entered the order on partial recusal. This timing is too protracted to satisfy the prompt filing criterion of Tennessee Supreme Court Rule 10B, section 1.01, "a recusal motion must be 'filed promptly after the facts forming the basis for the motion become known . . . .'" While Wife may raise the partial recusal issue in this Court under Tennessee Rule of Appellate Procedure 3 once a final judgment is entered in this case, we cannot reach the issue of partial recusal in the instant appeal due to the time that has elapsed between entry of the partial recusal order and the filing of this accelerated appeal. *See Cain-Swope*, 523 S.W.3d at 88 (quoting *Duke*, 398 S.W.3d at 670).[11]

## C. Trial Court's Citations to *Adkins I*

Wife's third alleged ground for recusal concerns the trial judge's citations to *Adkins I* in its April 11, 2018 Attorney's Fees Order and during the November 5, 2020 hearing on the Motion to Disburse. Specifically, Wife's brief states:

> The Trial Judge has cited to an intermediate Tennessee Appellate Court Opinion in making a decision to disburse funds being held by Agreed Order while subject matter jurisdiction of this case lies in the Appellate Court and no T.R.A.P. 42 mandate has been returned.[12] The intermediate Appellate Court Opinion, referred to as *Adkins I*, should not be cited in the making of a trial court decision by prior mandate of the Tennessee Supreme Court. The Trial Judge ruled there will be a disbursement, without jurisdiction, but upon citing to *Adkins I* in his decision-making process:
>
> > **THE COURT:** I think it was three years ago that you had asked for your attorney's fees. And during that process, I had asked Mr. Heldman and Ms. Abernathy [(Wife's counsel)] to disclose their fees. They refused to do that. The record will speak for itself. I put down a total of either two or three orders ordering them to say what their fees were. The record will speak for itself, but correct me if I'm wrong.

---

[11] Wife further argues that this Court should not only recuse the trial judge but also vacate all of the trial judge's orders following the August 18, 2017 order of partial recusal. Wife asserts that, because the partial recusal should have been a complete recusal, any order following the trial judge's partial recusal should be "vacated as void or being entered without subject matter jurisdiction." Because we do not reach the merits of the partial recusal issue in this appeal, Wife's request is denied at this time. Furthermore, in the Third 10B Petition, Wife also asks this Court to "[o]rder complete recusal of the other three (3) 21st Judicial District Judges who 'partially' recused themselves by Order of August 24, 2017.'" We do not reach this issue for two reasons: (1) we do not reach the issue concerning partial recusals; and (2) Wife failed to raise this as an issue in the trial court. *See Barnes*, 193 S.W.3d at 501 (citing *Simpson*, 810 S.W.2d at 153); *see also Dougherty*, 2020 WL 1189096, at *3.

[12] We address Wife's jurisdictional argument below in Section D.

- 17 -

> Finally, that was part of one of the motions to recuse. **Of course, Judge Clement took care of that and said, obviously, as we all know, the Court can look at the other side's fees to determine, as part of the pie, if you would certain issues regarding reasonableness, necessity, et cetera.**

(Emphasis in original). Wife also asserts that the following comments from the November 5, 2020 hearing, were error and demonstrate the trial judge's bias against her:

> **HUSBAND'S ATTORNEY:** I think, first and foremost, Your Honor – especially because [Wife] just doesn't seem to get that her actions actually have consequences. You know, as of right now this has all been words on paper. You know, "You don't have any credibility." "You're filing Rambo-style litigation." And she just sees this judgment on paper of –
>
> **THE COURT:** Yeah. I didn't say "Rambo-style." I think Judge Clement in the Court of Appeals said that.

Wife also takes issue with the trial court's references to *Adkins I* on pages 17 and 22-23 of the Attorney's Fees Order, to-wit:

> It is clear from the above exchange between this Court and Mr. Heldman, he and Ms. Abernathy simply did not want to produce their total amount of attorneys' fees. This Court is at a loss to understand why Wife and her attorneys did everything within their power to avoid disclosing the amount of fees, costs, and litigation expenses charged to Wife. The Court of Appeals noted in its *Opinion* on May 11, 2017 affirming this Court's denial of recusal, "courts routinely order counsel for the parties to submit records reflecting the fees charged to their clients . . . . This is because the trial court wanted to compare the fees charged by opposing counsel to assure that Wife would not be required to pay an exorbitant fee." (emphasis applied) *Adkin[s] v. Adkins*, p.11. No. M2017-00495-COA-T10B-CV (Tenn. Ct. App. May 11, 2017).
>
> \*\*\*
>
> The total advanced by Mr. Heldman and Ms. Abernathy for their representation of Wife was **$749,273**, as of the date of the hearing on August 17, 2017. These fees were generated by Wife's attorneys solely to set aside the MDA and the PPP, for which she was unsuccessful. Since August 17, 2017, Wife has continued to file numerous new pleadings, separate lawsuits against [the trial court] and its Judicial Legal Assistant, and many more

motions and other pleadings with subsequent hearings, almost all of which, if not all, have been dismissed or denied. Indeed, the Court of Appeals' Opinion in this case on the first Motion for Recusal, which was decided by the Court of Appeals on May 11, 2017, states in part as follows:

> It is also significant that the trial judge presided over this action for a year and a half after Wife filed her motion to set aside the mediated agreement. During this time[,] the parties engaged in spirited, almost Rambo-style, litigation that involved an excessive number of motions, hearings, discovery, and a two-day trial.

*Adkin[s] v. Adkins*, p. 10, No. M2017-00495-COA-T10B-CV (Tenn. Ct. App. May 11, 2017).

> The Court of Appeals described this case accurately in the words set out above.

(Emphasis in original).

As an initial matter, Wife's statement that "the [t]rial [j]udge has cited to an intermediate Tennessee Appellate Court Opinion in making a decision to disburse funds . . ." is misleading. The trial court heard Husband's Motion to Disburse on November 5, 2020 but did not announce its ruling at that time. As indicated by the trial court in its order denying the Third 10B, it "took the matter under advisement to research the issue of whether or not [the trial court] had jurisdiction to rule upon the disbursement of attorneys' fees while the case was pending in the Court of Appeals." The trial court then announced its decision to disburse the sale proceeds on February 11, 2021, discussed *supra*. Notably, Wife does not allege that the trial court made any reference to **Adkins I** during the February 11, 2021 hearing or in its February 25, 2021 Order Disbursing Funds, and this Court finds no evidence of such reference in the record. Similarly, the Attorney's Fees Order, cited above, was entered in April of 2018, which was well before Husband filed his Motion to Disburse. Accordingly, the trial court made no decision to disburse funds at that time. Nevertheless, for completeness, we address Wife's arguments concerning the trial court's citations to **Adkins I** during the November 5, 2020 hearing and in the April 11, 2018 Attorney's Fees Order. However, before turning to Wife's argument, we briefly address the timeliness of the filing of the Third 10B.

A litigant's timing when filing a motion to recuse is always an important factual detail for this Court to review. All too often litigants employ Tennessee Supreme Court Rule 10B, not to preserve their right to a fair trial before an impartial tribunal, but to gain some procedural advantage. **Cain-Swope**, 523 S.W.3d at 87-88 (internal citations omitted). We have explained before that "our '[c]ourts frown upon the manipulation of the

- 19 -

impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order 'to experiment with the court . . . and raise the objection later when the result of the trial is unfavorable.'" *Cain-Swope*, 523 S.W.3d at 88 (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998)). As briefly discussed above, to guard against litigants using Rule 10B to gain a procedural advantage, the Rule states that a recusal motion must be "filed **promptly** after a party learns or reasonably should have learned of the facts establishing the basis for recusal." Tenn. Sup. Ct. R. 10B, § 1.01 (emphasis added). A litigant's failure to assert such alleged facts in a timely manner results in the litigant's waiver of the right to question the judge's impartiality regarding those facts. *See Cain-Swope*, 523 S.W.3d at 88 (quoting *Duke*, 398 S.W.3d at 670).

As it concerns the trial court's citation to *Adkins I* in the April 11, 2018 Attorney's Fees Order, the certificate of service on that order shows that it was served on the parties on April 13, 2018. At that time, Wife became aware of the trial court's citation to *Adkins I* in that order. If Wife was concerned that the trial judge's reference to *Adkins I* demonstrated bias against her, it was incumbent on Wife to file a motion to recuse at that time to preserve her right to question his partiality. *See* Tenn. Sup. Ct. R. 10B, § 1.01. However, rather than filing for recusal upon learning of the trial court's reference to *Adkins I,* Wife continued to litigate the case in Judge Binkley's court for almost three more years. By failing to promptly raise the issue, we conclude that Wife waived the trial court's reference to *Adkins I* in the Attorney's Fees Order as a ground for recusal. *See Cain-Swope*, 523 S.W.3d at 88 (quoting *Duke*, 398 S.W.3d at 670).

Turning to the trial court's reference to *Adkins I* during the November 5, 2020 hearing, the record shows that Wife's attorneys were present for the hearing. Accordingly, Wife was aware of the trial judge's comments and citation to *Adkins I* on November 5, 2020. Again, if Wife was of the opinion that the trial judge's comments concerning *Adkins I* demonstrated bias against her, it was incumbent on her to promptly file a motion for recusal. However, according to the record, Wife waited to file the Third 10B until after the February 11, 2021 hearing (some three months after the November 5, 2020 hearing) where the trial court announced its decision to disburse the sale proceeds. The record also shows that, on Friday, February 19, 2021, Husband's counsel delivered a copy of the proposed Order Disbursing Funds to Wife's counsel; the following Monday, February 22, 2021, Wife filed her Third 10B. That same day, Wife also filed an Objection to Entry of Order, in which she objected to the trial court entering the Order Disbursing Funds and argued that, under Rule 10B, section 1.02, the trial court could "enter no further order and . . . take no further action in any proceeding" in the case until the motion to recuse was resolved.[13] It is clear from the record that Wife delayed filing the Third 10B until after the trial court announced its decision to disburse the sale proceeds to Husband. The timing of this filing, coupled with Wife's filing of the Objection to Entry of Order on the same day,

---

[13] *See* discussion, *supra*, Section A(1)(a).

compels us to conclude that the Third 10B was a strategic manipulation of the judicial system in an attempt to prevent (or at least delay) the trial court's entry of the Order Disbursing Funds to Husband. *See Cain-Swope*, 523 S.W.3d at 88 (citing *Eldridge*, 137 S.W.3d at 8). It is exactly this type of gamesmanship that our courts frown upon. *Cain-Swope*, 523 S.W.3d at 88 (quoting *Kinard*, 986 S.W.2d at 228). Because Wife failed to seek immediate relief after the November 5, 2020 hearing and instead waited until after she received an adverse ruling from the trial court to assert this ground for recusal, she has waived the ground. *See Cain-Swope*, 523 S.W.3d at 88 (quoting *Duke*, 398 S.W.3d at 670).

Although Wife technically waived the grounds for recusal concerning the trial court's reference to *Adkins I*, to foster and preserve the public's confidence in judicial neutrality, we will briefly address Wife's contention that the Tennessee Supreme Court's designation of *Adkins I* as "Not for Citation" precludes the trial court's reference to the case. *See Cain-Swope*, 523 S.W.3d at 88. In support of her contention, Wife argues that "[t]he [t]rial [j]udge's reliance on and citing to the substance of *Adkins I*, where the Tennessee Supreme Court and Rule has Ordered and instructed no judge or litigant to do so, 'would cause a reasonable person to question the judge's ability to be impartial in any further proceeding involving these parties.'" (Citation omitted).

As noted above, although the Tennessee Supreme Court denied hearing in *Adkins I*, it designated this Court's opinion as "'Not for Citation' in accordance with Supreme Court Rule 4(E)(1)." Tennessee Supreme Court Rule 4(E)(1) provides: "If an application for permission to appeal is hereafter denied by this Court with a 'Not for Citation' designation, the opinion of the intermediate appellate court has no precedential value." Tenn. Sup. Ct. R. 4(E)(1). Accordingly, by designating *Adkins I* "Not for Citation," the Tennessee Supreme Court was merely stating that the opinion has "no precedential value." In other words, *Adkins I* may not be cited in support of arguments in other cases. However, *Adkins I* is part of the history of the instant case and so may be cited in **this** case for referential purposes, i.e., explanation of the case history and previous rulings. This is exactly the purpose for which Judge Binkley referenced *Adkins I*. As Judge Binkley explained in his order denying the Third 10B, during the November 5, 2020 hearing, he was "trying to recall the very lengthy history of this case while 'thinking out loud' and obtaining what the [t]rial [c]ourt believed to be an accurate history of how the case evolved on the issue of attorneys' fees ruled upon on August 17, 2017 . . . ." *Adkins I* was simply part of the history of the case.

Furthermore, to the extent Wife alleges the trial judge's citations to *Adkins I* demonstrate his bias against her, she has wholly failed to meet her burden of proof to show any reasonable basis for the trial judge's impartiality. "A judge's comments and actions must be construed in the context of all surrounding facts and circumstances to determine whether a reasonable person would construe them as indicating partiality on the merits of the case." *Cain-Swope*, 523 S.W.3d at 89 (citing *Groves v. Ernst-W. Corp.*, No. M2016-

- 21 -

01529-COA-T10B-CV, 2016 WL 5181687, at *5 (Tenn. Ct. App. Sept. 16, 2016) (citing **Alley**, 882 S.W.2d at 822)).  Here, the trial judge's citations to **Adkins I** merely concerned the case's procedural history and in no way showed that Judge Binkley was biased against Wife.  Accordingly, even if not waived, Wife's arguments would not constitute reversible error.

### D.  Trial Court's Actions While Case Was Pending Before Appellate Courts

Wife's fourth alleged ground for recusal, which is discussed briefly above at Section A(1), is that

> [t]he Trial Judge has held two (2) hearings and taken action when jurisdiction of this case is clearly in the Appellate Court, such being a fundamental illegality requiring recusal.  [Husband] even stated in a Reply, filed February 10, 2021:
>
> > **[Husband] is agreeable for this [c]ourt to act out of an abundance of caution and continue the hearing on the final order until the Court of Appeals' mandate has issued.**
>
> The Trial Judge, having refused to continue the hearing and ruled otherwise, shows the appearance of bias against [Wife].  Judge Binkley should recuse himself, therefore, according to the Cannons of Judicial Conduct, stated herein.

(Emphasis in original).  As an initial matter, Wife fails to specify exactly which "two (2) hearings" and exactly what "action" the trial court has taken outside of its jurisdiction.  We glean, however, that Wife is likely referring to the November 5, 2020 hearing on Husband's Motion to Disburse and the February 11, 2021 hearing on Husband's Motion to Rule.

Although stated as one issue, we discern that Wife's argument is two-fold: (1) the trial court was without jurisdiction to disburse the real property sale proceeds while **Adkins II** was pending on appeal; and (2) because Husband agreed that the trial court should wait to enter an order on the Motions to Disburse and to Rule until after the mandate had issued, the trial court showed apparent bias against Wife when it entered the Order Disbursing Funds despite both parties agreeing to wait.

Concerning Wife's first issue, i.e., that the trial court did not have jurisdiction to enter an order on the Motions to Disburse and to Rule, the trial court, in its order denying the Third 10B, noted:

> Wife does not state how this particular Ground for recusal, assuming it is correct, shows any bias or prejudice against her personally which would rise

- 22 -

to the level of some type of appearance of impropriety, bias, or prejudice whereby recusal of this Trial Judge would be warranted.

We agree. Upon review of the Third 10B and the Third 10B Petition, we conclude that Wife wholly failed to allege that the trial court's actions, i.e. holding two hearings and entering an order prior to the mandate, demonstrated Judge Binkley's bias against her. Rather, the majority of Wife's arguments allege that, because the mandate had not yet issued in *Adkins II*, the trial court was "without jurisdiction . . . to enter any order in response to [the Motions to Disburse and to Rule]," and "[a]ny order entered [at that time] would be void and a waste."[14] Essentially, Wife argues that the trial court erred when it entered the order; she does not argue that the trial court's entry of the order demonstrated bias or prejudice against her. Such argument goes to the merits of the trial court's decision to disburse the proceeds before the mandate issued and not to the trial judge's alleged bias against Wife. As discussed, *supra*, the only order this Court may review on a Rule 10B accelerated interlocutory appeal is the trial court's order denying the motion to recuse. *Duke*, 398 S.W.3d at 668. Under Rule 10B, we may not "review the correctness or merits of the trial court's other rulings . . . ." *Id.*; *see also Stark*, 2019 WL 2515925, at *8 ("[W]hether the trial judge erred in his rulings on Husband's motions is not an issue in this limited, interlocutory appeal."). Accordingly, in the instant accelerated appeal, we cannot reach the question of whether it was error for the trial court to enter an order before the mandate issued in *Adkins II*.

We now turn to Wife's second issue, i.e., that the trial court showed the appearance of bias against Wife when it entered the Order Disbursing Funds despite Husband's agreement to wait until the mandate issued. Specifically, Wife argues that

[f]rom this portion of his own written Reply, [Husband] would have been content to wait for a mandate to return or to hold the hearing in abeyance. Judge Binkley was not. He wanted to take funds kept by agreement between the parties in the Clerk's Office and transfer them to [Husband] before the

---

[14] For completeness, we note that Wife briefly alleged in this section of the Third 10B that Judge Binkley's "facial mannerism[s] to [Wife's] attorney Joanie Abernathy" and his "mimicking [of] her argument about the 'mandate'" during a Zoom hearing demonstrated "that Judge Binkley is biased against [Wife] and her counsel and that he cannot be impartial in the case." By this statement, Wife alleged that the trial judge's actions, i.e. his alleged facial mannerisms and mimicking of Wife's attorney's argument during a hearing, demonstrated Judge Binkley's bias against Wife and her attorneys. In its order denying the Third 10B, the trial court wholly denied acting in the manner described by Wife. Furthermore, Wife appears to have dropped this fleeting allegation of bias in the Third 10B Petition before this Court. "Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4). An issue not included is not properly before the Court of Appeals." *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). Because she failed to include the allegations concerning the trial judge's alleged facial mannerisms and mimicking in her statement of the issues on appeal, Wife has waived the same.

- 23 -

Tennessee Supreme Court has an opportunity to rule on a [Tennessee Rule of Appellate Procedure] 11 Application to be filed.

Wife appears to allege that Judge Binkley was so biased against her that he unilaterally and without request from either party, disbursed the parties' funds from the sale of the real property to Husband despite Husband's agreement to wait until the mandate issued. In other words, Wife's argument hinges on whether Husband agreed to wait for a mandate to return before the trial court: (1) held hearings on the Motions to Disburse and to Rule; and (2) entered the Order Disbursing Funds.

Wife's allegation that Husband was "content to wait for a mandate to return or to hold the hearing in abeyance" misinterprets Husband's position concerning the timing of the disbursement of the sale proceeds. In fact, Wife contradicts her own argument on pages 42 and 71 of her Third 10B Petition when she acknowledges that Husband "pushed forward with his Motion to Disburse Proceeds" after Wife filed her Rule 3 appellate brief. Indeed, it is clear from the record that Husband continually advanced the issue of the Motion to Disburse because he was concerned Wife would be unable to satisfy his judgment against her at the end of the litigation. As discussed, *supra*, on September 18, 2020, while Wife's Rule 3 appeal was pending before this Court, Husband filed the Motion to Disburse. The trial court heard this motion on November 5, 2020 and took the matter under advisement. This Court issued its opinion in *Adkins II* on December 22, 2020. On January 4, 2021, Wife filed a petition to rehear, which this Court denied by order of January 14, 2021.

Importantly, on January 28, 2021, Husband filed the Motion to Rule and set if for a hearing on February 11, 2021. In the Motion to Rule, Husband asked the trial court to: (1) rule on his Motion to Disburse; and (2) enter a final order in the case. On February 5, 2021, Wife filed her response opposing this motion and arguing that, because a mandate had not yet issued in *Adkins II*, the trial court lacked jurisdiction to enter an order on Husband's motion. Specifically, Wife argued that "[a]ny order entered at this time . . . would be void and a waste." After receiving Wife's response, the trial court directed Husband to respond to her argument that the trial court lacked jurisdiction to enter any order before the mandate issued. Husband filed his reply on February 10, 2021. It is from statements Husband made in this reply that Wife now argues he agreed to postpone both the hearing on the Motion to Rule and entry of the Order Disbursing Funds. Our review of Husband's reply paints a decidedly different picture of Husband's position.

Wife's argument that Husband was content to wait until a mandate issued before the trial court ruled on the Motion to Disburse rests on portions of Husband's reply that are taken out of context. Upon our review of Husband's entire reply, it is clear that he only agreed to continue the hearing *on the final order* until after the mandate issued in *Adkins II.* However, Husband was eager at that time for the trial court to rule on his Motion to Disburse. As the trial court found in the order denying the Third 10B, Husband's reply stated that "he believes that his request for the [trial c]ourt to enter an order on his Motion

- 24 -

to Disburse. . . can and should be heard now. . .," and Husband provided case law to support his argument. Husband's reply concluded with the following:

> WHEREFORE PREMISES CONSIDERED, [Husband] **requests that the [trial c]ourt bifurcate the two issues before it and rule on the Motion to Disburse . . . now** and address the Motion to Enter a Final Order after the . . . mandate has issued.

(Emphasis added). Furthermore, in his response to the Third 10B Petition, Husband declares (in bold and italicized font) that he "never agreed that the trial court should wait to rule on the funds disbursement issue," and he quotes the sections of his reply cited, *supra*. Husband asserts that "Wife makes it sound like [Husband] wanted to wait on the funds disbursement issue, but that ***the trial judge*** had such a grudge against [Wife] that he insisted on giving her money away over [Husband's] objection." (Emphasis in original). Conversely, Husband argues that "[t]he trial court only granted [Husband's] relief on the funds disbursement issue because he asked for it fervently (twice), briefed case law supporting it, and argued at two different hearings in favor of disbursing the funds immediately."

It is clear from the record that Husband continually advanced the disbursement issue and asked the trial court to enter an order on the Motion to Disburse *despite* Wife's pending Rule 3 appeal. Therefore, Wife has failed to meet her burden of proof to show that the trial court's Order Disbursing Funds was the product of Judge Binkley's bias against her. ***In Re: Samuel P.***, 2016 WL 4547543, at *2 (citing ***Duke***, 398 S.W.3d at 671 (quoting ***Eldridge***, 137 S.W.3d at 7-8) (finding that the party claiming judicial bias failed to provide any evidence "that would prompt a reasonable, disinterested person to believe that the trial judge's impartiality might reasonably be questioned.")). Accordingly, we affirm the trial court's denial of the Third 10B as to this ground.

### E. Trial Court's Comments at the November 5, 2020 Hearing

Wife's fifth alleged ground for Judge Binkley's disqualification concerns comments he made during the November 5, 2020 hearing. Specifically, Wife alleges:

> The Trial Judge has made comments at a hearing on November 5, 2020, indicating bias against [Wife] and her attorneys and partiality in favor of [Husband] when the [t]rial [c]ourt had no jurisdiction to rule as the case was on appeal. (a). In one comment the Trial Judge affirmed a statement from Larry Hayes, [Husband's] attorney, that for [Wife] and her attorneys there had not been a "**day of reckoning yet – and I underline the word yet**." (b) The Trial Judge also emoted he is "concerned that [Husband] won't get paid because [Wife] is running out of money, possibly. I don't know. It's just something [t]hat concerns me." (c) In yet another, the Trial Judge referenced

- 25 -

the fact that [Wife] had previously petitioned ("a lawsuit") [sic], against the judge and his judicial legal assistant to obtain public records, on a USB drive given to the Judge by Mr. Hayes at the Judge's *ex parte* request. Clearly saying these things did not have anything to do with whether it had jurisdiction to do anything on November 5 2020, thus indicating the appearance of bias against [Wife], similar to what led to Judge Binkley's Recusal in *David Chase v. Chris Stewart*, 2021 WL [402565] (Tenn. App[.] Feb. 4, 2021).

(Emphasis in original). Wife includes relevant portions of the transcript of the November 5, 2020 hearing in her pleadings, *see discussion infra*.

We have previously discussed Wife's argument concerning jurisdiction (*supra* at Section D). We have also addressed Wife's untimely filing of the Third 10B as it concerns the trial judge's comments from the November 5, 2020 hearing (*supra* at Section C). Again, we note the untimely filing of Wife's Third 10B. Although she takes issue with comments made by Judge Binkley on November 5, 2020, as discussed above, she did not file her Third 10B until after the trial court ruled against her on Husband's Motions to Disburse and to Rule. Based on the timing of her Third 10B, it appears to this Court that Wife was attempting to "silently preserve [the trial court's comments from the hearing] as an 'ace in the hole' to be used in the event of an adverse decision." **Gotwald v. Gotwald**, 768 S.W.2d 689, 694 (Tenn. Ct. App. 1988); *see also* **Eldridge**, 137 S.W.3d at 8. Having failed to file the Third 10B immediately after learning of the facts that formed the basis for this alleged ground for recusal, i.e., the trial judge's comments during the November 5, 2020 hearing, Wife waived her right to question Judge Binkley's partiality concerning the same. *See* **Cain-Swope**, 523 S.W.3d at 88 (quoting **Duke**, 398 S.W.3d at 670).

Although Wife waived this issue, to foster and preserve the public's confidence in judicial neutrality, we will address whether Judge Binkley's comments demonstrated bias against Wife. *See* **Cain-Swope**, 523 S.W.3d at 88. As discussed, *supra*, "[a] judge's comments and actions must be construed in the context of all surrounding facts and circumstances to determine whether a reasonable person would construe them as indicating partiality on the merits of the case." **Cain-Swope**, 523 S.W.3d at 89 (citing **Groves**, 2016 WL 5181687, at *5 (citing **Alley**, 882 S.W.2d at 822)). Here, Wife cites three of Judge Binkley's comments, all of which appear in the same section of the hearing transcript.

Turning to the transcript, the hearing began with Husband's attorney explaining the procedural history of the attorney's fees issue and Husband's request to satisfy his judgment for attorney's fees out of Wife's portion of the sale proceeds. After hearing Husband's request, Judge Binkley summarized his understanding of the lengthy procedural history concerning the attorney's fees issue. During his summary, the trial judge mentioned Wife's attorneys' refusal to provide documentation concerning the amount of her attorneys' fees. In continuing to summarize the procedural history, the trial court stated:

- 26 -

**TRIAL COURT:** Right after that, the litigation continued with a lawsuit Mr. Heldman and Ms. Abernathy filed against me . . . and Ms. Rubenstein. And that case was heard over a long period of time, with other pleadings being filed. That was heard by Judge Parkes, over in Columbia. That was also dismissed.

There have been many things that have happened since then with work being performed on the case. Two things I'm concerned about. Number one, if the fees that Ms. Abernathy and Mr. Heldman have charged [Wife] was $750,000 some time ago, I would guess that the fees that Mr. Heldman and Ms. Abernathy has charged would be close to $2 million. I don't know. But I'm concerned that [Husband] won't get paid because [Wife] is running out of money, possibly. I don't know. It's just something that concerns me.

And it's unfair for [Wife's] marital estate to be drained to such an extent that she's unable to pay judgments down the road. One of the things I was thinking about when I was reviewing this –

What is – what are your total amount of fees with interest right now? 617,000 as of three years ago?

**HUSBAND'S ATTORNEY:** That number is $617,047. But that is just the judgment that was awarded.

**TRIAL COURT:** Okay.

**HUSBAND'S ATTORNEY:** I can – it was a judgment—this kind of is telling of this case. It was a judgment awarded in April 2018 for fees through, I believe, [August] 2017.

**TRIAL COURT:** Okay. I see.

**HUSBAND'S ATTORNEY:** There had not been a day of reckoning yet – and I underline the word yet – in [August] 2017. I've got three years of fees. I have no idea what that is.

**TRIAL COURT:** Yeah. I understand. Well, they do too. That's why I'm concerned.

**HUSBAND'S ATTORNEY:** Yeah. Your memory is good. I'm looking at page 22 of your memorandum entered April 11, 2018, and you say the total fees of Ms. Abernathy and Mr. Heldman is $749,273, compared to

- 27 -

[$533,278], which you awarded.

>TRIAL COURT: Right.  Okay.  And, again, that was about three years ago.
>So I would imagine – with all the litigation that's gone on since then – I'm
>guessing, but I would imagine Mr. Heldman and Ms. Abernathy have
>probably charged in the range of a couple million dollars to [Wife].  But I
>don't know.  I don't have a clue.
>
>But I'm concerned.  I'm concerned that [Wife] may run out of money and
>may not be able to satisfy this judgment, even though she's received millions
>of dollars as a result of payments on the terms of the marital dissolution
>agreement, which has been attacked by Mr. Heldman and Ms. Abernathy on
>behalf of their client.

After the foregoing exchange, the trial court turned to Wife's attorney for her argument.
The transcript shows that the trial judge was attentive, responsive, and respectful to Wife's
attorney during her argument.  Nevertheless, Wife asserts that

>Judge Binkley's affirmation concerning no "day of reckoning yet – and I
>underline the word yet," for [Wife] and her lawyers, his reference to the
>"lawsuit" for which he "partially" recused himself and his statement that he
>is "concerned that [Husband] won't get paid" shows an appearance of bias in
>favor of [Husband] and against [Wife].

In the first instance, Wife's allegation that Judge Binkley "affirmed a statement from
Larry Hayes, [Husband's] attorney, that for [Wife] and her attorneys there had not been a
'**day of reckoning yet – and I underline the word yet**'" is not supported by the record.
(Emphasis in original).  When Judge Binkley's comment is read in context, it is clear that
his statement, "Yeah. I understand," was not an affirmation of Mr. Hayes' comment that
"[t]here had not been a day of reckoning yet."  Rather, the trial judge's statement affirmed
Mr. Hayes' subsequent statement that he had three years of attorney's fees, and that he did
not know the dollar amount of those fees.  Judge Binkley's follow up comments clarify
this reading.  After he stated, "Yeah. I understand," the trial judge continued, "Well, they
do too."—meaning that Wife's attorneys also had three years of additional attorney's fees
that were not the subject of the November 5, 2020 hearing.  The trial court confirmed its
meaning in the order denying the Third 10B, to-wit: "[T]he [t]rial [c]ourt was referring to
attorneys' fees incurred by both sides since the last payment by Wife of $750,000 to her
two (2) attorneys was recorded as part of the transcript of the hearing on August 17, 2017."
Based on the foregoing, a reasonable and disinterested person could conclude only that the
trial judge's statement was merely declarative of the state of the parties' attorneys' fees
and not indicative of a bias against Wife. ***In re Samuel P.***, 2016 WL 4547543, at \*2 (citing
***Duke***, 398 S.W.3d at 671 (quoting ***Eldridge***, 137 S.W.3d at 7-8)).

- 28 -

It is clear from the record that the additional attorneys' fees incurred in this protracted litigation troubled the trial court. Based on the judge's comments concerning the voluminous billing records, Wife alleges that "[t]he Trial Judge also emoted he is 'concerned that [Husband] won't get paid because [Wife] is running out of money, possibly. I don't know. It's just something [t]hat concerns me." In view of the record in this case, the trial court's concern was warranted. Nonetheless, Wife has failed to show any evidence that the trial judge's concern that attorneys' fees would decimate the marital estate demonstrated clear bias against her. *In re Samuel P.*, 2016 WL 4547543, at \*2; *see also **Williams by & through Rezba***, 2015 WL 2258172, at \*5; ***McKenzie***, 2014 WL 575908, at \*3. Although Wife couches the trial court's concern as bias, when reviewing the trial judge's comments in the "context of all surrounding facts and circumstances," it is clear the trial court was only carrying out its responsibility as a court of law, i.e., trying to ensure that a party to whom a judgment is owed is able to collect on that judgment. ***Cain-Swope***, 523 S.W.3d at 89 (citing ***Groves***, 2016 WL 5181687, at \*5 (citing ***Alley***, 882 S.W.2d at 822)). Indeed, in its order denying the Third 10B, the trial court explained that it "was not voicing empathy or concern for Husband . . . [but] was doing what it should do, and that is to weigh alternatives and determine whether or not it was appropriate to grant Husband's *Motion* at the very hearing on that same *Motion*."

Finally, Wife alleges that Judge Binkley's reference to Wife's lawsuit against him and his judicial assistant demonstrated the trial judge's bias against her. As support for her argument, Wife cites ***Chase v. Stewart***, No. M2018-01991-COA-R3-CV, 2021 WL 402565 (Tenn. Ct. App. Feb. 4, 2021), *reh'g denied* (Mar. 16, 2021). The only similarity between ***Chase*** and the current appeal is that Judge Binkley was also the presiding trial judge in ***Chase***. In that case, this Court concluded that Judge Binkley should have recused himself based on comments he made concerning an attorney for one of the ***Chase*** parties during a hearing in an unrelated matter. *Id.* at \*5. Specifically, the trial judge "blamed [one of the attorneys in ***Chase***] for the court's exposure to negative publicity. . . ," and was "crystal clear" and "transparent" about not liking that attorney's actions. *Id.* The trial judge also stated that he did not like "many, many other things" that attorney had done. *Id.* Finally, the trial judge also "envisaged that 'my day will come.'" *Id.* These comments provide a stark contrast to Judge Binkley's comments here, where he merely noted Wife's lawsuit against him while reciting the case's procedural history. Notably, at the November 5, 2020 hearing, the trial judge expressed no animosity toward Wife or her counsel for Wife's lawsuit against him. Indeed, there is nothing in the trial judge's comments to indicate he harbored any animosity against Wife or her attorneys or that he was seeking any type of retribution against Wife for filing the lawsuit. *Cf id.* ("Taken in context, 'a reasonable person would construe th[e] remarks as indicating' that the judge may have sought retribution against [the attorney] for a perceived wrongdoing . . . ."). Rather, the record demonstrates the opposite. As discussed, *supra*, the trial judge was respectful to Wife's attorney and was attentive, responsive, and polite during her argument. Accordingly, even if not waived, Wife has failed to meet her burden on this issue.

## V. Husband's Request for Attorney's Fees

Husband asks this Court to award him attorney's fees incurred in this appeal. Generally, litigants must pay their own attorneys' fees absent a statute or agreement providing otherwise. *See* ***State v. Brown & Williamson Tobacco Corp.***, 18 S.W.3d 186, 194 (Tenn. 2000). Here, Husband asks this Court to award him his fees based on Tennessee Code Annotated section 27-1-122 and his allegation that Wife's appeal is frivolous. Section 27-1-122 states that

> [w]hen it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. "A frivolous appeal is one that is devoid of merit or has no reasonable chance of success." ***Selitsch v. Selitsch***, 492 S.W.3d 677, 690 (Tenn. Ct. App. 2015). The statute must be interpreted and applied strictly so as not to discourage legitimate appeals. ***Henderson v. SAIA, Inc.***, 318 S.W.3d 328, 342 (Tenn. 2010). Furthermore, "[t]he decision to award damages for the filing of a frivolous appeal rests solely in the discretion of this Court." ***Chiozza v. Chiozza***, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009).

In her reply, Wife alleges that her appeal is not frivolous because: (1) the trial court did not have jurisdiction to enter the Order Disbursing Funds; (2) the trial judge should have recused himself entirely in August of 2017; and (3) the trial court included Husband's response to the Third 10B in its order denying the same. Essentially, Wife simply restates some of her alleged grounds for recusal.

Having reviewed the record, and in light of the foregoing discussion, we conclude that the present appeal is both frivolous and likely taken to further delay these proceedings. As discussed in detail above, Wife has failed to present any cogent argument to support her allegation that the trial judge was biased or prejudiced against her. Most of Wife's alleged grounds for recusal fall into four categories—the grounds either: (1) relitigate the same argument from a previous motion for recusal; (2) are untimely; (3) argue the merits of a different order; or (4) fail to allege any bias. The few grounds Wife asserts that are both timely and allege bias are wholly unsupported by the record. Indeed, after review, it is clear to this Court that many of the "facts" Wife alleged in her pleadings to support the grounds for recusal are inaccurate, misleading, and taken out of context. For example, Wife omitted from her pleadings the fact that the trial court substantively ruled on Husband's Motions to Disburse and to Rule on February 11, 2021, several days before she filed the Third 10B. She also declined to provide this Court with a transcript from that hearing that would show the trial court's substantive ruling. Also, Wife quoted a section

from Husband's pleading to support her argument, but ignored another section from Husband's pleading that was actually relevant to the issue. For these and many other reasons, we conclude that Wife's appeal is devoid of merit and, thus, frivolous. However, not only is Wife's appeal frivolous, but there is also little doubt that the appeal is an attempt to manipulate Rule 10B to delay or prevent the payment of Husband's judgment for attorney's fees. Based on the foregoing, we grant Husband's request for appellate attorney's fees, and remand for determination of Husband's reasonable attorney's fees incurred in this appeal and for entry of judgment on same.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's order denying the motion for recusal. Husband's request for appellate attorney's fees is granted, and the case is remanded to the trial court for determination of Husband's reasonable attorney's fees on appeal, for entry of judgment on same, and for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed against the Appellant, Rhonda Forlaw Adkins, for all of which execution may issue if necessary.

    s/ Kenny Armstrong          
KENNY ARMSTRONG, JUDGE
